**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Israel Valencia LOPEZ, Defendant–
Appellant.**

**No. 98–30051.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1998.

Decided Dec. 31, 1998.

1143

Lynn Shepard, Eugene, Oregon, for the defendant-appellant.

Sean B. Hoar, Assistant United States Attorney, Eugene, Oregon for the plaintiff-appellee.

Before: NOONAN, THOMPSON, and TROTT, Circuit Judges.

NOONAN, Circuit Judge:

Israel Valencia Lopez appeals his sentence after his plea of guilty to the offense of distributing heroin. His appeal claims that he is entitled to "a safety valve" provided by the Sentencing Guidelines. We reject his contention and affirm the sentence.

### FACTS AND PROCEEDINGS

Lopez was born on October 17, 1975 in Michoacan, Mexico. He came to the United States in October of 1996 and in a few days settled in Eugene, Oregon. On August 12, 1997 Lopez filed a Petition to Enter Plea of Guilty, stating that "On December 20, 1996, in the District of Oregon, I distributed more than 100 grams of heroin, a controlled substance." His plea was accepted and the case proceeded to sentencing.

At the time of his arrest after leaving the apartment of Rebecca Burres he told agents of the Drug Enforcement Agency that Jose Maria Rangel Farias had told him to deliver the heroin to Burres. He added that Martin Mendez and Arturo Valencia Sandoval had brought him the heroin at the apartment after Rangel Farias left for work. Lopez than changed his story and told agents that Mendez and Sandoval did not deliver the heroin. Rather, he stated that after Rangel Farias had left for work he found the heroin on the sofa at the apartment. Lopez provided no further information about the sources of the heroin he had sold.

The presentence report recommended that Lopez did not qualify for safety valve treatment under U.S.S.G. §§ 2D1.1 and 5C1.2.

The district court agreed, finding: "Defendant has not truthfully told everything he knows about the criminal activities in this case." The district court further found that Lopez had set up the heroin sale and delivered the goods and was therefore more than a minimal participant, so that no reduction on that ground would be warranted. Finally, the district court rejected Lopez's contention that there was an unwarranted disparity in his sentence and that of Mendez, who had been shown to have had more drug transactions than Lopez but in another case had received a sentence identical to the five year sentence the government proposed for Lopez. The district court proceeded to impose the mandatory five year minimum term of imprisonment on Lopez.

Lopez appeals.

### ANALYSIS

*The Safety Valve*

Under U.S.S.G. § 2D1.1(b)(6) a reduction in sentence below the statutory minimum is provided if the defendant meets the criteria set out in U.S.S.G. § 5C1.2, subsections 1–5. This so-called safety valve provision has five criteria. Lopez meets four of them. He does not have more than one criminal history point. He did not use violence or a credible threat of violence or possess a firearm or other dangerous weapon. His offense did not result in death or serious bodily injury to any person. He was not the organizer of others or engaged in a continuing criminal enterprise. However, he comes up short as to the fifth criterion that by the time of sentencing he "truthfully provide to the Government all information and evidence the defendant has concerning the offense." It is plain from what he first blurted out to the DEA agents that he had an idea of who furnished the heroin. His story of finding the heroin in the sofa rings false, as does his confinement of his confession to persons he knew were already implicated, that is, Burres and Rangel Farias. The district court did not plainly err in finding that he had not told all he knew. His youth, his short experience of life in the United States and his possibly limited experience in the ways of drug dealers and his certainly clear desire not to in-

volve more people than he had to—none of these matters is a substitute for meeting the stringent standard set by the Sentencing Guidelines. He was tantalizingly close to the safety valve, but he did not make it.

Lopez notes that a recantation of a guilty plea did not disqualify a defendant from the safety valve in *United States v. Shrestha,* 86 F.3d 935 (9th Cir.1996); but in *Shrestha* the defendant did not recant as to the information he had provided about others involved in the transaction. *Id.* at 937. Lopez also invokes *United States v. Real–Hernandez,* 90 F.3d 356 (9th Cir.1996), where the defendant met the criteria for the safety valve by a debriefing in another case even though he had declined to be debriefed in his own; the second case debriefing occurred before sentencing in the first case, and we observed, "The plain language of section 5C1.2(5) allows any provision of information in any context to suffice, so long as the defendant is truthful and complete." *Id.* at 361. Lopez's recantation casts doubt on his truthfulness at the same time that his story of the heroin appearing on the sofa was markedly incomplete.

*Role in the Offense*

■ Obviously others brought the heroin to Lopez before he delivered it to Burres. Nonetheless he was the one who did deliver it, make the sale and get the money. The district court did not err in treating him as more than a minor participant.

*Disparity of Sentence*

■ Mendez pleaded guilty to a conspiracy to distribute heroin after a coconspirator was arrested with more than 100 grams of heroin at an airport in an incident unrelated to Lopez's sale to Burres. He plea bargained, agreeing that the minimum five year sentence was appropriate and waiving appellate and post-conviction relief rights. Burres is not in a position to challenge the appropriateness of Mendez's sentence nor is the sentence received by Mendez an appropriate

measure of what Lopez should receive. This contention is without a substantial basis.

**AFFIRMED.**