**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Andres RUELAS–ARREGUIN,**
**Defendant–Appellant.**

**No. 99–50213.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2000.

Filed July 19, 2000.

---

Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

David P. Curnow, Assistant U.S. Attorney, San Diego, California, for the plaintiff-appellee.

Before: WALLACE, PREGERSON and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

This appeal would seem to present a question from the realm of quantum physics: to what extent does existence depend on observation? Or, in our terms, is venue proper only where an alien is seen and arrested for being "found in" the United States in violation of 8 U.S.C. § 1326, or may he be prosecuted in the district where he illegally entered and traversed unseen? Applying the continuing offense doctrine, we conclude that venue is proper in either district and affirm the conviction. We remand for resentencing, however, because Ruelas–Arreguin was improperly denied an additional one-level adjustment for acceptance of responsibility.

## I

Ruelas–Arreguin is a native and citizen of Mexico who illegally returned to the United States after having been deported. Upon reentry, he was transported through Southern California undetected in the bed of a pickup truck traveling east towards Yuma, Arizona. INS border patrol agent Stephen Johnson was traveling westbound on Interstate 8 from Yuma to El Centro, California when he received a radio dispatch regarding a white pickup truck with a red stripe and camper shell heading eastbound on Interstate 8. Agent Johnson was approximately two miles within California when he received the radio message. He sighted the pickup truck, crossed the median, and began following the vehicle for five or six miles eastbound on Interstate 8 from California into Arizona. At this initial sighting, only the driver was visible.

After the vehicle stopped in the parking lot of a local restaurant in Yuma, Agent Johnson approached the vehicle to question the driver and, at that time, discovered numerous people, including Ruelas–Arreguin, laying on the floor of the truck bed. After he had established their Mexican citizenship, Agent Johnson arrested the occupants of the vehicle and arranged to have them transported to the Yuma border patrol station, where they were each interviewed by INS officials and processed through the IDENT system. When questioned at the Yuma station, Ruelas–Arreguin confirmed that he had been previously convicted for attempted murder. He also signed a sworn affidavit indicating that he was in the United States illegally after having been deported and that he had used a false name.

Thereafter, Ruelas–Arreguin was indicted in the Southern District of California on one count of being a deported alien found in the United States in violation of 8 U.S.C. § 1326. Following the government's case-in-chief, Ruelas–Arreguin presented no case other than a motion for judgment of acquittal under Fed.R.Crim.P. 29 ("Rule 29"). The district court deemed the Rule 29 motion timely but did not entertain it until after closing arguments and the reading of the jury instructions. In that motion, Ruelas–Arreguin argued that venue was improper in the Southern District of California because he was "found" for purposes of § 1326 in Arizona, not California.

The district court rejected the asserted grounds for acquittal but took the venue issue under submission. After the jury returned with a guilty verdict, the district court denied the venue portion of the Rule 29 motion without prejudice and asked for additional briefing by sentencing.

At the sentencing hearing, the district court denied the Rule 29 motion in its entirety without further explanation. The district court also rejected Ruelas–Arreguin's request for an additional one-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(1). Instead, the district court awarded only a two-level reduction under U.S.S.G. § 3E1.1(a), observing that: "While Mr. Ruelas certainly is deserving of the minus 2 for acceptance, the additional point basically being a convenience factor to the parties involved, is not warranted and the court will not award the additional point." Ruelas–Arreguin was then sentenced to 63 months imprisonment, to be followed by 3 years of supervised release.

■ The district court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review *de novo* the question whether venue was properly laid in the Southern District of California, *see United States v. Childs*, 5 F.3d 1328, 1331 (9th Cir.1993), and we review the district court's decision to withhold an additional one-level adjustment under U.S.S.G. § 3E1.1(b) for clear error. *See United States v. Villasenor–Cesar*, 114 F.3d 970, 973 (9th Cir.1997).

## II

Initially, we must decide whether Ruelas–Arreguin preserved his objection to venue when he moved for a judgment of acquittal on grounds of improper venue at the close of the government's case. Consistent with the uniform decisions of our sister circuits, we conclude that he did.

 If a defect in venue is clear on the face of the indictment, a defendant's objection must be raised before the government has completed its case. *See Hanson v. United States,* 285 F.2d 27, 28 (9th Cir.1960). However, as numerous circuits have recognized, if the venue defect is not evident on the face of the indictment, a defendant may challenge venue in a motion for acquittal at the close of the government's case. *See, e.g., United States v. Robinson,* 167 F.3d 824, 829 (3d Cir.), *cert. denied,* — U.S. —, 120 S.Ct. 118, 145 L.Ed.2d 100 (1999); *United States v. Melia,* 741 F.2d 70, 71 (4th Cir.1984) (per curiam); *United States v. Solomon,* 29 F.3d 961, 964 (5th Cir.1994); *United States v. Brandon,* 50 F.3d 464, 469 (7th Cir. 1995); *United States v. Black Cloud,* 590 F.2d 270, 272 (8th Cir.1979); *United States v. Daniels,* 5 F.3d 495, 496 (11th Cir.1993) (per curiam).

Although we have not expressly adopted such a rule, *see United States v. Jensen,* 93 F.3d 667, 669 n. 2 (9th Cir.1996) ("We express no view as to the proper disposition of a motion for acquittal for lack of venue, should one be made after the close of the government's case-in-chief."), we have nevertheless made room for it, *see Gilbert v. United States,* 359 F.2d 285, 288 (9th Cir.1966) (implying that venue objection may have been timely if raised in motion for acquittal). Thus, in line with the persuasive decisions of our sister circuits, we hold that venue objections made at the close of the government's case-inchief are timely if the defect in venue is not apparent on the face of the indictment.

 In this case, the alleged defect in venue was not apparent on the face of the indictment. The indictment alleged that Ruelas–Arreguin was "found in" the United States "within the Southern District of California." On its face, therefore, the indictment alleged proper venue because it alleged facts which, if proven, would have sustained venue in the Southern District of California. *See United States v. Mendoza,* 108 F.3d 1155, 1156 (9th Cir.1997) ("[O]nly the indictment may be considered in pretrial motions to dismiss for lack of venue, and [ ] the allegations must be taken as true."). Thus, Ruelas–Arreguin preserved his objection to venue when his counsel moved at the close of the government's case for a judgment of acquittal on the ground that venue was improper in the Southern District of California.[1]

## III

 Although the venue objection may have been timely, venue was proper in the Southern District of California. The Constitution requires that venue lie in the district where a crime was committed. *See* U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI. This constitutional command is repeated in the Federal Rules of Criminal Procedure. *See* Fed. R.Crim.P. 18. The burden of establishing proper venue by a preponderance of the evidence rests with the government. *See United States v. Angotti,* 105 F.3d 539, 541 (9th Cir.1997).

---

1. In holding that Ruelas–Arreguin preserved his venue objection, we do not suggest that an acquittal is the proper remedy for improper venue. *See United States v. Hernandez,* 189 F.3d 785, 792 n. 5 (9th Cir.1999) ("We reject the contention by Hernandez that a judgment of acquittal is the appropriate remedy in the case of improper venue."). When venue has been improperly laid in a district, the district court should either transfer the case to the correct venue upon the defendant's request, *see* Fed.R.Crim.P. 21(b), or, in the absence of such a request, dismiss the indictment without prejudice, *see United States v. Kaytso,* 868 F.2d 1020, 1021 (9th Cir.1989).

To decide whether venue was proper in the Southern District of California, we "must initially identify the conduct constituting the offense ... and then discern the location of the commission of the criminal acts." *United States v. Rodriguez–Moreno*, 526 U.S. 275, 279, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999). Under § 1326, a deported alien may be convicted for either entering, attempting to enter, or being "found in" the United States. *See* 8 U.S.C. § 1326(a)(2). They are three distinct offenses. *See United States v. Pacheco–Medina*, 212 F.3d 1162, 1166 (9th Cir.2000). The crime of being "found in" the United States is completed when the "alien is discovered and identified by the immigration authorities." *United States v. Hernandez*, 189 F.3d 785, 791 (9th Cir. 1999), *cert. denied*, — U.S. ——, 120 S.Ct. 1441, 146 L.Ed.2d 329 (2000). However, the crime does not begin and end there.

An "entry" into the United States is required before a person is "found in" the United States. *See Pacheco–Medina*, 212 F.3d at 1166. "Entry" into the United States is "embedded in the 'found in' offense." *Id.* Thus, the crime of being "found in" the United States commences with the illegal entry, but is not completed until discovery. *See United States v. Salazar–Robles*, 207 F.3d 648, 650 (9th Cir. 2000). In that sense, we have held that it is a "continuing offense," *United States v. Ramirez–Valencia*, 202 F.3d 1106, 1110 (9th Cir.2000) (citing *United States v. Guzman–Bruno*, 27 F.3d 420, 423 (9th Cir. 1994)), even though the crime does not crystalize until official discovery and identification. To paraphrase T.S. Elliot, the crime's beginning is in its end, and its end in its beginning.

For such continuing crimes, "[v]enue may lie in any district in which the continuing conduct has occurred." *United States v. Barnard*, 490 F.2d 907, 910 (9th Cir.1974); *accord Angotti*, 105 F.3d at 542 ("[C]ontinuing offenses may be prosecuted where they are begun, contin-

ued, or completed ....") (citing 18 U.S.C. § 3237(a)). Section 3237(a), the venue statute for continuing offenses, provides that:

> any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).

Here, Ruelas–Arreguin was undoubtedly "found" in the District of Arizona when he was identified and arrested by the INS; however, because illegal entry is "embedded" in the "found in" offense, the crime commenced in the Southern District of California and continued until his apprehension. Thus, under 18 U.S.C. § 3237(a), venue was proper in either the Southern District of California or the District of Arizona.

*Hernandez* does not compel a contrary conclusion; indeed, it supports this construction. In *Hernandez*, 189 F.3d at 791, we held that the crime of being "found in" the United States was completed for venue purposes at the point of discovery by INS authorities. Therefore, post-crime transportation of the defendant by the government did not make venue proper in the district where he was taken after arrest. *See id.* This holding is entirely consistent with the plain language of § 3237(a), which makes no provision for new proper venues to be created after completion of the crime and apprehension by authorities.

Ruelas–Arreguin insists that *United States v. Ortiz–Villegas*, 49 F.3d 1435 (9th Cir.1995), and *United States v. Ayala*, 35 F.3d 423 (9th Cir.1994), dictate a different conclusion, but they do not. In those cases, we suggested that an alien can avoid being "found in" the United States by departing after his illegal re-entry. *See Ayala*, 35 F.3d at 425; *Ortiz–Villegas*, 49 F.3d at 1437 n. 2. That is undoubtedly true, given that the crime is not completed

until discovery by the authorities. However, prior undetected criminal forays do not vitiate new violations of § 1326. Nor does the fact that one may avoid a crime by failing to complete it mean that the criminal act was not commenced.

■■ Ruelas–Arreguin also argues that 18 U.S.C. § 3237(a) is trumped by 8 U.S.C. § 1329, the venue statute for § 1326 offenses, because § 1329 provides for prosecutions to be instituted "at any place in the United States at which the violation may occur" or where the defendant "may be apprehended." 8 U.S.C. § 1329. Venue lying "at any place . . . at which the violation may occur" is entirely consistent with the idea of a continuing offense. Thus, § 1329 does not conflict with § 3237(a).

Because a violation of 8 U.S.C. § 1326 for being "found in" the United States without the Attorney General's permission is a continuing offense which commences with entry and concludes with discovery, venue was proper in either the Southern District of California or the District of Arizona. Thus, we affirm Ruelas–Arreguin's conviction.

### IV

We remand for resentencing because the district court erred when it withheld the additional one-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(1). Ruelas–Arreguin was entitled to the adjustment because he made a timely and complete confession at the time of his arrest.

■■ Section 3E1.1(a) of the Sentencing Guidelines provides for a two-level reduction in a defendant's offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). If a defendant qualifies for this two-level adjustment, the burden is on the government to demonstrate that the defendant was not entitled to the additional one-level reduction under § 3E1.1(b). *See United States v. Colussi,* 22 F.3d 218, 220 (9th Cir.1994). Section 3E1.1(b), in pertinent part, provides for an additional one-level adjustment if "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by . . . timely providing complete information to the government concerning his own involvement in the offense." U.S.S.G. § 3E1.1(b)(1). "The key inquiry for § 3E1.1(b) is whether the confession was complete and timely." *United States v. Guadalupe Blanco–Gallegos,* 188 F.3d 1072, 1077 (9th Cir.1999) (citing *United States v. Eyler,* 67 F.3d 1386, 1391 (9th Cir.1995), and *United States v. Stoops,* 25 F.3d 820, 823 (9th Cir.1994)).

■■ Here, Ruelas–Arreguin was entitled to the additional adjustment because, during questioning at the Yuma border patrol station, he made a timely and complete confession: he confirmed his prior criminal record and admitted by affidavit that he was in the United States illegally, that he had been deported previously, and that he had used a false name. Because his timely post-arrest statements admitted "all of the elements of the charged crime," the fact that those statements were "not used at trial" is irrelevant, and the additional one-point reduction under § 3E1.1(b)(1) is mandatory. *Id.; see also United States v. Chee,* 110 F.3d 1489, 1494 (9th Cir.1997) (affirming denial of adjustment where "defendant did not timely provide complete information" concerning his crimes). Thus, we reverse the denial of the additional-one level adjustment under U.S.S.G. § 3E1.1(b)(1) and remand for re-sentencing with instructions to award the additional one-level adjustment.

### V

In sum, Ruelas–Arreguin was properly prosecuted in the Southern District of California. However, he was entitled to an additional one-level adjustment under U.S.S.G. § 3E1.1(b)(1). Accordingly, we affirm his conviction but vacate his sen-

tence and remand for re-sentencing consistent with this opinion.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.